**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Case No. 2:22-cr-0242** |
| | **:** | |
| **v.** | **:** | **Judge Algenon L. Marbley** |
| | **:** | |
| **STEVEN E. ROBERTS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**OPINION & ORDER**

This matter comes before this Court on Defendant Steven E. Roberts's *pro se* Motion for Compassionate Release (the "Motion"). (ECF No. 41). For the reasons set forth below, Mr. Roberts's Motion is **DENIED.**

**I.      BACKGROUND**

In February 2022, Columbus police officers found over thirty (30) grams of cocaine base at Mr. Roberts's residence. (ECF No. 31 ¶ 8). After returning with a search warrant in November 2022, officers found Mr. Roberts in possession of over twenty-eight (28) grams of cocaine base, two (2) loaded firearms, two (2) digital scales, a money counter, and $1,160. (*Id.*). Mr. Roberts pleaded guilty to two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. 841(a)(1) & 841(b)(1)(B)(iii). (ECF No. 26). This Court held a Sentencing Hearing on December 21, 2023, during which this Court sentenced Mr. Roberts to forty-eight (48) months of imprisonment, five (5) years of supervised release, and a $200 special assessment. (ECF No. 36). Additionally, this Court recommended that the Bureau of Prisons ("BOP") permit Mr. Roberts to participate in a treatment program to address his mental health and substance abuse issues; a

vocational training program; and the Resident Drug Abuse Program ("RDAP"). (ECF No. 37 at 3).

On May 26, 2024, Mr. Roberts sent a request for compassionate release to the Warden (the "Initial Request"). (ECF 41-1 at 6). In the request, Mr. Roberts stated he has medical issues including Glaucoma (which he claims requires surgery), severe asthma, back issues, and possibly other COPD issues. (*Id*.). Mr. Roberts claimed these medical issues were not properly addressed in his incarceration facility. (*Id*.). On June 18, 2024, the Warden rejected the request. (*Id*. at 1).

On September 23, 2024, Mr. Roberts filed the Motion. (ECF No. 41). In the Motion, Mr. Roberts did not mention the medical issues described in the Initial Request. (*See id*.). Instead, he generally claimed he was not getting the care he needed. (*Id*.). He stated he could not participate in RDAP due to his criminal history, and he claimed he participated in "no programs, except the [programs he] was allowed to take." (*Id*.). Mr. Roberts also claimed he did not receive time credits, despite his clan institutional record, while others "are getting 10 to 15 days off of their sentence each month." (*Id*.). He requested release to participate in a program, the ReSet Today Residents Embracing Sobriety, Mental Health, and Treatment Intensive Outpatient Program (the "ReSet Program"). (*Id*) He stated participation in the program would help with recovery, mental health, and doctor appointments. (*Id*.). He believes the ReSet Program would help and give him "a great chance of never returning to jail." (*Id*.).

The Motion included a copy of the Initial Request and the Warden's response; a letter from the ReSet Program indicating Mr. Roberts's potential involvement in the program upon release; correspondence, between Mr. Roberts and Health Services, regarding an eyedrop refill; a medical duty status form indicating Mr. Roberts is legally blind; and a form indicating Mr. Roberts is precluded from early release pursuant to 18 U.S.C. 3261(e)(2)(b). (ECF No. 41-1). The Motion

also included a document stating Mr. Roberts's current work assignment, education information, courses taken while incarcerated; and reflecting Mr. Roberts has no discipline history for the past six (6) months. (ECF No. 41-3).

On September 25, 2024, the Government filed a Response in Opposition to Mr. Roberts's Motion. (ECF No. 42). The Government urges the Court to deny the motion (i) for lack of extraordinary and compelling reasons, and (ii) because the sentencing factors used to determine whether a sentence reduction is authorized weigh in favor of denying the Motion. (*Id*.).

## II.     STANDARD OF REVIEW

Pursuant to the "compassionate release" provision of 18 U.S.C. § 3582, a sentencing court "may reduce the term of imprisonment" of a defendant who has exhausted administrative rights and who shows "extraordinary and compelling reasons [to] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020). A district court maintains discretion to grant or deny such a petition, though the court must "supply specific factual reasons for [its] compassionate release decisions." *Jones*, 980 F.3d at 1101–02; *see also United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) ("We review a district court's denial of a compassionate release motion for abuse of discretion.").

In *Jones*, the Sixth Circuit set forth a three-step framework for district courts to follow when considering motions for compassionate release. 980 F.3d at 1107-08. Once the movant has met the threshold requirement of administrative exhaustion, *see United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), the court must undertake the following three-step inquiry in considering such a motion:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis

added). . . . At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1107–08 (alterations original).

Each step is a mandatory prerequisite for compassionate release. *Id*. A movant's failure to satisfy any of the three steps may lead to denial of the motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").

### III.    LAW & ANALYSIS

Administrative exhaustion is a threshold requirement in any motion for compassionate release. This condition is satisfied when a defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a [compassionate release] motion on the defendant's behalf or [upon] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is not jurisdictional, but rather "a claim-processing rule" that "bind[s] the courts only when properly asserted and not forfeited." *Alam*, 960 F.3d, at 833.

Mr. Roberts submitted the Initial Request to the Warden on May 26, 2024. (ECF No. 41-1 at 6). The Warden responded on June 18, 2024, denying the Initial Request. (*Id*. at 1). The Government does not assert that Mr. Roberts failed to exhaust his administrative remedies. As such, the Court may begin the three-step inquiry in *Jones*.

### A.  Extraordinary and Compelling Reasons

First, Mr. Roberts must establish "extraordinary and compelling reasons" justifying his release and warranting a sentence reduction under 18 U.S.C. § 3852(c)(1)(A)(i). *Jones*, 980 F.3d at 1101. If "extraordinary and compelling reasons" are found, the court will then consider whether

"'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" then weigh "all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

*1. Recovery and Mental Health Needs*

Mr. Roberts argues he is not currently getting the care he needs. (ECF No. 41). In support of his assertion, he explains he was denied admission to RDAP. (*Id.*). He states he is not requesting to be released to go home, but to go to the ReSet Program to help with recovery and mental health. (*Id.*). Mr. Roberts also claims he has had "no programs, except the [programs he] was allowed to take." (*Id.*).

Mr. Roberts, however, has not provided documents showing he is unable to participate in *any* programs in relation to his substance abuse or mental health. The Government states Mr. Roberts's argument regarding RDAP fails because the only evidence of denied admission to RDAP is from his previous incarceration term in July 2016. (ECF No. 42 at 5). For this *current* incarceration term, however, Mr. Roberts has failed to provide documents showing his inability to participate in RDAP, or any program for his substance abuse or mental health.

Even if evidence is offered, Mr. Roberts's claims regarding participation in certain programs do not establish any extraordinary and compelling reasons justifying release and warranting sentence reduction. Specifically, Mr. Roberts's inability to participate in RDAP is not an extraordinary and compelling reason when RDAP is not guaranteed and is not a condition of incarceration. *See United States v. Smith*, No. 23-5519, 2024 WL 1007115, at *5 (6th Cir. Mar. 8, 2024).

In *Smith*, for example, the Sixth Circuit affirmed the district court's holding that denied admission into RDAP was not an extraordinary and compelling reason warranting relief. *Id.* The

Sixth Circuit noted that the district court recommended the defendant participate in RDAP, but the defendant was not entitled to any such program. *Id.* The BOP has the authority to approve or deny defendant's participation. *See id.* (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011) (holding that a court may recommend the BOP place defendant in a program but the authority for allowing participation rests with the BOP)). Similarly, in the Judgment, this Court recommended that Mr. Roberts be permitted to participate in a treatment program to address his mental health and substance abuse issues; a vocational training program; and RDAP. (ECF No. 37 at 3). These are only recommendations.

The ultimate authority on whether Mr. Roberts may participate in each program rests with the BOP and any such denial of participation is not an extraordinary and compelling reason warranting release.

### 2. Time Credits

Mr. Roberts also asserts that he is not receiving "F.S.A. or F.S.C." while others "are getting 10 to 15 days off of their sentence each month." (ECF No. 41 at 2). This Court construes this as an argument regarding time credits under the First Step Act ("FSA Time Credits"). *See* 18 U.S.C. § 3632(d)(4).

Pursuant to the First Step Act, inmates may earn ten (10) days of FSA Time Credits for every thirty (30) day period the inmate successfully participates in Evidence-Based Recidivism Reduction Programs or in Productive Activities. 18 U.S.C. § 3632(d)(4)(A)(i). Inmates may also earn an additional five (5) days of FSA Time Credits for every thirty (30) day period the inmate is determined by the BOP to be at a minimum or low risk for recidivating and has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and need assessments conducted by the BOP. 18 U.S.C. § 3632(d)(4)(A)(ii).

The Government argues that Mr. Roberts has not submitted any documents showing he was denied FSA Time Credits. (ECF No. 42 at 6). Even if Mr. Roberts had shown documents, the Government argues district courts have rejected arguments that the ineligibility for FSA Time Credits is an extraordinary and compelling reason warranting compassionate release. (ECF No. 42 at 6).

This Court finds that, like Mr. Roberts's potential inability to participate in RDAP, FSA Time Credits are offered through a program requiring an eligibility determination in which this Court does not maintain the authority to control. *See e.g.*, *United States v. Castro*, No. 5:06-CR-54, 2022 WL 4082475, at *4 (W.D. Va. Sept. 6, 2022) (holding that determining eligibility for participation in time credits program is an exercise of discretion by the BOP; thus, ineligibility to participate is "not an extraordinary and compelling reason warranting compassionate release"); *United States v. Soto*, No. CR 10-20635, 2022 WL 16787858, at *5 (E.D. Mich. Nov. 8, 2022) (holding the court does not have authority to order the BOP to give defendant time credits "because the authority rests with the BOP"); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (holding the court does not have the authority to compute sentence credits). Additionally, if Mr. Roberts received FSA Time Credits, they only apply to "prerelease custody or supervised release," not to a term of imprisonment. 18 U.S.C. § 3632(d)(4)(C). Prerelease custody, however, is also "solely within the BOP's discretion." *United States v. Smith*, 646 F. Supp. 3d 915, 920 (E.D. Mich. 2022).

Accordingly, any argument regarding application of FSA Time Credits is "neither extraordinary nor compelling" for this Motion. *Id.*

### 3. Medical Needs

In Mr. Roberts's Initial Request, he states he has medical issues including Glaucoma, severe asthma, back issues, and possibly other COPD issues. (ECF No. 41-1 at 1). Mr. Roberts further indicates in his Motion that the ReSet Program will assist him with traveling to eye doctor appointments. (ECF No. 41 at 1). The Government, again, points to the lack of evidence provided by Mr. Roberts. (ECF No. 42 at 7). Mr. Roberts has failed to provide medical records to support that his alleged medical issues are "extraordinary and compelling" reasons for release.

An "extraordinary and compelling" reason "is one that is unusual, rare, and forceful." *United States v. McCall*, No. 21-3400, 2022 WL 17843865, at *6 (6th Cir. Dec. 22, 2022). General health concerns have been found to meet this standard in only unique circumstances. *See, e.g.*, *United States v. Mellon*, No. 2:20-cr-140, 2022 WL 2704151, at *1 (S.D. Ohio July 12, 2022) (finding the "extraordinary and compelling element" was met where a defendant's kidney disease required "constant dialysis" and "necessitated surgeries and external evaluations at a local hospital"). The Sixth Circuit has noted that where the defendant fails to provide records in their motion to support the claimed medical condition, the district court could deny the motion for compassionate release on that basis. *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021).

This Court has not received any document indicating Mr. Roberts needs to be released for: (1) eye doctor appointments referenced in the Motion or (2) any of the health conditions listed in his Initial Request. (*See* ECF Nos. 40, 41-1 at 6). Thus, this Court does not find the medical issues, as alleged in the Initial Request and the Motion, provide "extraordinary and compelling" reasons.

If this Court assumes Mr. Roberts has the alleged medical issues, the documents provided with the Motion do not indicate he is not getting the care that [he] need[s]." (*See* ECF No. 41 at 1). Mr. Roberts has only shown he sought care for his eyes. (ECF No. 41-1 at 5, 7–9). Between

April 10, 2024, and April 22, 2024, he requested a refill of eyedrops and was informed that he could have a refill on April 26, 2024. (*Id*.). This does not show Mr. Roberts is denied any medical attention; rather, this indicates Mr. Roberts is getting the medical help requested.

Mr. Roberts, thus, fails to show that his medical issues provide "extraordinary and compelling" reasons justifying his release and warranting a sentence reduction under 18 U.S.C. § 3852(c)(1)(A)(i).

### 4. *Rehabilitation*

Finally, Mr. Roberts asserts that he maintained "a clean institutional record for the time" he has been incarcerated, remained out of trouble, and followed the rules. (ECF No. 41 at 1-2). While the Court encourages those efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction in sentence under section 3582(c)(1)(A). 28 U.S.C. § 994(t); *see also United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021).

### B. Policy Statement

In *Jones*, the Sixth Circuit clarified that "in cases where incarcerated persons file their own motions in district court for compassionate release," as opposed to the BOP moving on the person's behalf, the policy statement set out in U.S.S.G. § 1B1.13 is no longer considered applicable. *Jones*, 980 F.3d at 1101–02. Accordingly, *Jones* instructs that courts "may skip step two" in those instances "and have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id*. at 1111. Because Mr. Roberts's claim fails on prong one of the *Jones* test, and because he brings this Motion on his own behalf, the Court need not refer to the policy statement.

### C. § 3553 Factors

Because Mr. Roberts failed the first step of providing extraordinary and compelling reasons, this Court could decline to examine the third step, whether the § 3553 factors warrant release "because the lack of an extraordinary and compelling reason for release is dispositive." *United States v. Ocampo*, 650 F. Supp. 3d 578, 584 (E.D. Mich.) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."). Nonetheless, this Court will examine the § 3553 factors.

Some of the § 3553(a) factors this Court must consider are the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

The facts of this case show that in February 2022, Columbus police officers found over 30 grams of cocaine base at Mr. Roberts's residence. (ECF No. 31 ¶ 8). Subsequently, on November 30, 2022, officers searched Mr. Roberts's car and bedroom and found over 28 grams of cocaine base, two loaded firearms, two digital scales, a money counter, and $1,160. (*Id*.). After his arrest, Mr. Roberts spoke to officers and admitted that he sold cocaine base to earn extra money and to support his own addiction. (*Id*. ¶ 13). He discussed his first-hand knowledge of how drugs can ruin an individual's life and expressed remorse for being responsible for contributing to others' addictions. (*Id*. ¶ 17).

Putting the facts of this case aside, Mr. Roberts has a significant criminal history. The Government argues that Mr. Roberts's "personal history and characteristics are deeply disturbing and weigh against his effort to reduce his sentence . . . ." (ECF No. 42 at 9). In 1986, Mr. Roberts committed petty theft. ((ECF No. 31 ¶35). In 1988, he committed robbery and raped his twelve-year old neighbor. (*Id*. ¶ 36, 37). In 2003, Mr. Roberts was convicted of attempted possession of drugs and failure to comply; and in 2004 he was convicted of operating a motor vehicle while intoxicated. (*Id*. ¶ 38-40). In 2005, Mr. Roberts was convicted of another drug-related offense: possession of a firearm in furtherance of a drug trafficking activity and conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base. (*Id*. ¶ 41).

While incarcerated for the 2005 offense, Mr. Roberts participated in several courses including Personal Growth/Development, Personal Finances, Employment, Health and Nutrition, and Forklift Certification. (*Id*.). On May 23, 2018, he was transferred to a Residential Reentry Center ("RRC") for the remainder of his sentence. (*Id*.). In the RRC, Mr. Roberts incurred no violations and tested negative for all drugs. (*Id*.). On July 23, 2018, he began a five-year term of supervised release. (*Id*. ¶ 46).

Despite successfully completing courses while incarcerated for the 2005 drug-related offense, and maintaining a clean record while in the RRC, Mr. Roberts subsequently committed the instant drug-related offense. (*Id*. ¶ 46). The instant offense was committed on February 10, 2022, and November 30, 2022, while Mr. Roberts was serving his term of Supervised Release. (*Id*.).

Ultimately, when this Court balances the facts of this case and Mr. Roberts's pattern of criminal behavior against his arguments for release, this Court finds no basis for Mr. Roberts's Motion for Compassionate Release.

## IV.    CONCLUSION

For the reasons set forth above, Mr. Roberts's Motion for Compassionate Release (ECF No. 41) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: November 13, 2024**